Hillcrest School, Inc., et al. *v.* Casey.

Argued April 5, 1972, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Carroll F. Purdy,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for plaintiffs.

*William H. Smith,* Chief Counsel, with him *Thomas P. Kennedy,* Deputy Counsel, for defendant.

OPINION BY JUDGE KRAMER, May 23, 1972:

This matter comes within the original jurisdiction of this Court. Suit was commenced by the filing of a Complaint in Equity by Hillcrest School, Inc., John Reilly and Letitia Reilly (plaintiffs) seeking an injunction against Robert P. Casey, the Auditor General of the Commonwealth of Pennsylvania, (Auditor General) to enjoin him from auditing the plaintiffs' financial affairs, to return certain records to the plaintiffs and to restrain him from making public statements concerning information gained from an audit and investigation of the plaintiffs. The Complaint was filed on October 6, 1971.

On November 19, 1971, after hearing before this writer, an Application for a Preliminary Injunction was denied.

On December 29, 1971, the parties entered into a Stipulation of Facts which, together with the notes of testimony and exhibits presented at the preliminary injunction hearing, constitute the record in this case.

We adopt the Stipulation of Facts presented by the parties as the findings of fact of this Court for this determination. They are as follows:

"1. The Plaintiff, Hillcrest School, Inc., is a Pennsylvania business corporation having its principal place of business at R.D. 1, Hawley, Pennsylvania.

"2. The Plaintiff, John Reilly, is an individual residing in Wayne County, Pennsylvania, and whose address is Box 130, Hawley, Pennsylvania.

"3. The Plaintiff, Letitia Reilly, is an individual residing in Wayne County, Pennsylvania, and whose address is Box 130, Hawley, Pennsylvania.

"4. The Defendant, Robert P. Casey, is the Auditor General of Pennsylvania and his principal office address is 229 Finance Building, Harrisburg, Dauphin County, Pennsylvania.

"5. The Defendant is conducting an audit of the financial affairs of Hillcrest School, Inc. for the period 1964 through April, 1971.

"6. Prior to August 12, 1971, Defendant sought by negotiation with attorneys for Plaintiffs to audit the financial affairs of Hillcrest School, Inc., but Plaintiffs refused to submit to such an audit.

"7. Defendant filed a subpoena with the Sheriff of Lackawanna County on August 12, 1971 directing the Plaintiffs to turn over certain records of Hillcrest School, Inc., to Defendant on August 13, 1971.

"8. Under protest and under threat of the issuance of a subpoena, the Plaintiffs delivered to the Defendant certain documents and records of Hillcrest School, Inc., for the years 1963 through 1970 inclusive as shown by a receipt executed by Thomas P. Kennedy, Esq., Coun-

sel for the Department of the Auditor General, attached to the Complaint as Exhibit A.

"9.   The Defendant seeks to audit the said records and documents and plans to report on said audit.

"10.   Prior to April 1, 1971, Hillcrest School, Inc., was a facility licensed by the Pennsylvania Department of Public Welfare to provide interim care for mentally retarded children.

"11.   Prior to April 1, 1971, Hillcrest School, Inc., provided care for mentally retarded children for which it received direct payments from the Pennsylvania Department of Public Welfare.

"12.   Prior to April 1, 1971, Hillcrest School, Inc., provided care for mentally retarded children at the request of certain Pennsylvania counties, institutional districts and Mental Health and Mental Retardation Units.

"13.   These counties, institutional districts and Mental Health and Mental Retardation Units received grants or reimbursement from the Pennsylvania Department of Public Welfare at rates established by that Department on account of services rendered by Hillcrest School, Inc. to persons eligible for such reimbursed care under law and the Department's regulations.

"14.   All payments received by Hillcrest School, Inc., from the Pennsylvania Department of Public Welfare were based on that Department's prescribed amount for care of mentally retarded persons, including the payments received by Hillcrest School, Inc. from various counties, institutional districts and Mental Health and Mental Retardation Units from 1964 through 1971.

"15.   Since April 1, 1971, Hillcrest School, Inc. has not been a facility licensed by the Pennsylvania Department of Public Welfare.

"16.   Since April 1, 1971, Hillcrest School, Inc. has not provided any care for mentally retarded chil-

dren for the Department of Public Welfare, the counties, the institutional districts or anyone else.

"17. On July 14, 1971, Hillcrest School, Inc. received directly from the Department of Public Welfare the sum of $5,396.50 in payment for interim care of two mentally retarded children prior to April 1, 1971, more specifically for care provided from July 1, 1968 to June 30, 1969.

"18. At the time of the filing of the Complaint, October 6, 1971, and subsequently, there have been no monies paid or payable to Hillcrest School, Inc., by the Department of Public Welfare or any other state agency.

"19. At the time of the filing of the Complaint, October 6, 1971, and subsequently, there have been no monies paid or payable to Hillcrest School, Inc. by the counties, institutional districts or Mental Health and Mental Retardation Units.

"20. The Defendant, Robert P. Casey, on October 8, 1971, issued and served a summons, a copy of which is attached to the Application for Preliminary Injunction as Exhibit E, directed to John Reilly to appear and produce records in the Office of the Auditor General at 10:00 a.m. on Monday, October 18, 1971.

"21. John Reilly did not appear on October 18, 1971, as summoned or at any subsequent time.

"22. The Defendant, Robert P. Casey, on October 8, 1971, issued and served a summons, attached to the Application for Preliminary Injunction as Exhibit F, directed to Letitia Reilly to appear and produce records in the Office of the Auditor General at 10:00 a.m. on Monday, October 18, 1971.

"23. Letitia Reilly did not appear on October 18, 1971, as summoned or at any subsequent time.

"24. All care provided by Hillcrest School, Inc. for which payment was received directly from the De-

partment of Welfare was on a purchased service basis and not on a budget basis.

"25. All care provided by Hillcrest School, Inc. for which payment was received directly from counties, institutional districts and Mental Health and Mental Retardation Units was on a purchased service basis and not on a budget prepared by Hillcrest School, Inc."

## DISCUSSION

Although the findings of fact might suggest the possibility of many issues, the disposition of this case can be made upon the determination of a single question. That is: Where a Pennsylvania business corporation, operating as a licensed facility for handicapped chidren, and its sole stockholders are recipients of state funds, directly and indirectly, and cease to do business so that there is no future possibility of any further receipt of state funds, does the Auditor General have the power to conduct an audit of the books and records of such recipients after such cessation of business with the Commonwealth?

If the Auditor General has such power then even the plaintiffs agree that they have no basis to substantiate a right to an injunction against him. The plaintiffs in their Brief state: "If he has legal right to conduct this audit then there is no tortious conduct." Our review of the constitutional provisions and the statutory law of this Commonwealth leads us to hold that the Auditor General does have the power to conduct the audit sought in this case. We have found no relevant case law to give us guidance, and the parties cited none.

We begin with the pertinent provisions of the Pennsylvania Constitution, which are found in Article VIII, Section 10. It reads as follows:

"§10. Audit

"The financial affairs of *any entity* funded or financially aided by the Commonwealth, and all depart-

ments, boards, commissions, agencies, instrumentalities, authorities *and institutions* of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards. (Emphasis added)

"Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction *after its occurrence.*" (Emphasis added)

The applicable statutory provisions are found in the Fiscal Code, Act of April 9, 1929, P. L. 343, Article IV, Section 403, as amended, 72 P.S. 403, which reads, in pertinent part, as follows:

"The Department of the Auditor General shall have the power, and its *duty* shall be, *to audit* the accounts and records of *every person,* association, *corporation,* and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money *received was expended* or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor. (Emphasis added)

"If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury."

The plaintiffs submit that the constitutional provision, above quoted, applies only to entities which are "funded or financially aided" by the Commonwealth, and inasmuch as the Commonwealth agreed it was "purchasing services" from them, that none of the plaintiffs can be characterized as having been funded or aided. This argument has no merit. There can be little doubt from the record in this case that the plaintiffs received, directly and indirectly, state funds for "the custodial care, education and maintenance of retarded children." Although not all of the children at the Hillcrest School were financed, directly or indirectly, by the Commonwealth, Hillcrest School could not have provided the services it did without state funds; and, therefore, the Hillcrest School was financially aided by the Commonwealth. We hold that purchased services paid for with state funds comes within the constitutional provisions of "any entity funded or financially aided by the Commonwealth."

Next the plaintiffs would have us interpret the statutory provisions, above quoted, to mean that the Auditor General could only audit recipients of state funds who were still receiving, or who would still be entitled to receive state funds. They assume this position in reliance upon Section 403 of the Fiscal Code, which employs the verbal present tense, "receiving." Plaintiffs then proceed by pointing out that the second paragraph of Section 403, *supra,* merely provides for reports by the Auditor General to the Governor so that future payments could be curtailed. This argument likewise has no merit. The clear purpose of Section 403, *supra,* is to provide a means for the Commonwealth to assure itself that the taxpayers' money has been properly expended. The statutory provision clearly states that the Auditor General must be satisfied ". . . that the money received was expended . . . for no purpose other than

that for which it was paid. . . ." It would be difficult for the Legislature to set forth with any additional clarity its intent to subject the Auditor General to a "duty" to audit the records ". . . of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury. . . ."

If we were to hold, as the plaintiffs argue, that a recipient of state funds would no longer be subject to an audit by the Auditor General merely because the recipient went out of business, we would be providing an easy method for any such recipient to misapply state funds and immediately upon learning of a prospective audit to cease doing business with the Commonwealth. Such a result would be absurd.

To argue that the plaintiffs provided "services" which were purchased by some state agency and thereby the plaintiffs are subject only to a law suit by that state agency, begs the question. The Auditor General does not desire to bring a law suit, but only to audit the books and records to determine whether the state funds paid to the plaintiffs were used for the purpose for which they were paid. We recognize that the determination of whether plaintiffs earned a profit from their service contract is not within the scope of power of the Auditor General. What is important to the Auditor General's audit is whether the services listed by the plaintiffs in their billing to the state agency were, in fact, provided, and further provided under the law. As a matter of fact, this approach to an audit is the sole manner whereby the Auditor General can properly determine whether the various departments, agencies and instrumentalities of the Commonwealth have authorized payments for lawful purposes.

Although we need not rely upon the fact that the plaintiffs in this case were still *entitled* to some state

payment *after* the official notice of the proposed audit was sent to them by the Auditor General, it is an important fact. In other words, plaintiffs were still "entitled to receive" a "portion" of state funds after the notice of the proposed audit. If the plaintiffs are to be consistent, they have to recognize that even under their argument the audit in this case is appropriate.

It is true that the second paragraph of Section 403 of the Fiscal Code provides for notification of the Governor by the Auditor General in instances wherein the Auditor General determines that monies paid have ". . . been expended for any purpose other than that for which it was paid, . . ." and further instructs the Auditor General to decline any further requisitions for payment made by the recipient. The important feature of this second paragraph, however, is that the Auditor General has a duty to notify the Governor. That does not mean that the matter ends with such a report. The Auditor General is not duty-bound to proceed against any recipient of state funds who may have misappropriated, misapplied or misused such funds. The Governor, however, in Article IV, Section 2, of the Pennsylvania Constitution is given a duty to proceed further. That section states, inter alia: "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed; . . ." *See Commonwealth, ex rel. v. American Baseball Club of Phila.,* 290 Pa. 136, 144, 138 A. 497, 500 (1927); and *Chester County Institutional District, et al. v. Commonwealth, et al.,* 341 Pa. 49, 58, 17 A. 2d 212, 217 (1941). We can see, then, the legislative sense of placing a duty upon the Auditor General to make such a report. For, without such a duty, a discovery by the Auditor General of some wrongdoing in connection with the misuse of state funds might go uncommunicated to other state officials. This cannot happen in

view of the legislative mandate for the Auditor General to make a report to the Governor. The Governor thereafter, in carrying out his constitutional duty, would be required to make certain that either a civil claim or a criminal action be filed or lodged against one who has misused state funds. Under this governmental scheme the Auditor General does not have the duty to bring action against a wrongdoer; rather, legal action should be taken by the Governor through the Attorney General's Office.

With regard to the plaintiffs' request for an injunction against the Auditor General enjoining the release of public statements concerning the plaintiffs, the record in this case does not support, in any way whatsoever, the plaintiffs' allegations.

In summary then, it is our holding that the Auditor General had a duty to audit the books and records of the plaintiffs in connection with their direct or indirect receipt of state funds. This holding, however, does not mean that the Auditor General is given *carte blanche* to audit any records which he or his staff may desire. Rather it means that the Auditor General has the duty to audit any and all records which, in any way, may be pertinent and relevant to a determination of whether state funds have been properly used for the purpose for which they were paid, in accordance with the laws of this Commonwealth.

## Conclusion

1. Hillcrest School, Inc., a Pennsylvania business corporation, and John Reilly and Letitia Reilly, its sole stockholders, as recipients of state funds, both directly and indirectly, are subject to an audit of all of their books and records which, in any way, would be pertinent and relevant to an audit of their receipt and ap-

plication of state funds under the laws of the Commonwealth of Pennsylvania.

2. That the official notice of the audit sent to the plaintiffs having been issued prior to the last date of payment to the plaintiffs for services rendered prior thereto, conclusively supports the authority of the Auditor General to audit the plaintiffs' books and records. Even without this salient feature, we conclude that the Auditor General had a duty to audit the books and records of the plaintiffs under Section 403 of the Fiscal Code, Act of April 9, 1929, P. L. 343, Article IV, Section 403, 72 P.S. 403.

3. That the plaintiffs have failed to prove any tortious act or irreparable harm caused by the Auditor General, and are not entitled to the injunctive relief they seek in this case.

Based upon the above discussion, we

### ORDER

AND Now, this 23rd day of May, 1972, the Complaint of Hillcrest School, Inc., John Reilly and Letitia Reilly against Robert P. Casey (Auditor General) is hereby dismissed.