Resident Advisory Board of Philadelphia, Inc., Appellant, *v.* City of Philadelphia, Appellee.

Argued October 2, 1973, before President Judge Bowman and Judge Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Robert M. Landis,* with him *Dechert, Price & Rhoads,* for appellant.

*Sheldon L. Albert,* Chief Deputy City Solicitor, with him *Paul L. Rucci,* Assistant City Solicitor, and *Martin Weinberg,* City Solicitor, for appellee.

OPINION BY JUDGE MENCER, January 9, 1974:

A precise but important question is raised in this appeal. Does the Controller of the City of Philadelphia have the power to conduct an inspection and audit of the financial books and records of the Resident Advisory Board (Board)? The Court of Common Pleas of Philadelphia County, without an evidentiary hearing, ordered the inspection and audit. We reverse.

We are not confronted with the question of whether or not the Board's financial books and records may be inspected and audited by public officials but only whether the Controller of the City of Philadelphia has the authority to do so.

The powers of the City of Philadelphia and the duties of its officers are established by the Act of April 21, 1949, P. L. 665, 53 P.S. §13101 et seq. (First Class City Home Rule Act); the Act of June 25, 1919, P. L. 581, 53 P.S. §12101 et seq. (First Class Cities Act); and the Philadelphia Home Rule Charter (Charter) which the people of Philadelphia adopted on April 17, 1951, pursuant to the enabling First Class City Home Rule Act. Section 6-400(c) of the Charter provides:

"(c) Audits of the Financial Affairs of Officers, Departments, Boards, Commissions and Other Agencies. The Department [Auditing Department of the City Controller] shall audit at least annually the affairs of every officer, department, board, including the accounts of any board of directors of City trusts, and commission of the City and, as far as may be necessary, the accounts of any other agency receiving an appropriation from the City. . . .

"Special audits of the affairs of any officer, department, board, commission or agency may be made whenever in the judgment of the City Controller they appear necessary, and shall be made whenever the Mayor shall call upon the City Controller to make them."

On March 1, 1972, the City of Philadelphia filed, in the lower court, an application for an inspection and audit of the financial books and records of the Board. The lower court set a hearing for March 3, 1972, and prior thereto the Board filed an answer and pled new matter, raising various factual issues relative to the allegations of the application. The City of Philadelphia did not file a reply to the new matter contained in the Board's answer and, absent the presentation of any evidence, the lower court, on March 3, 1972, entered its order directing the inspection and audit sought by the application.[1] We granted a supersedeas pending determination of this appeal on its merits.

The Board originally was an unincorporated association, created on March 25, 1969 by virtue of a memorandum of understanding by and between the Philadelphia Housing Authority (Authority) and the Tenants' Improvement Council of Tasker Homes, the Richard Allen Tenants' Council, and the Association for the Improvement of Richard Allen, all councils of low-income public housing projects. On November 1, 1971, the Board was incorporated as a private nonprofit corporation.

The Board was created to represent the tenants of public housing throughout Philadelphia and to participate on their behalf in programs under the Demonstration Cities and Metropolitan Development Act of 1966.[2]

---

[1] When a matter is heard on petition and answer without proofs, the moving party must accept as verity the averments in the pleading of his adversary, which are well pleaded and pertinent to a consideration of the point to be determined at the hearing. *Harr v. Bernheimer*, 322 Pa. 412, 185 A. 857 (1936) ; Pa. R. C. P. No. 209(b). The Board averred that it had voluntarily made its financial books and records available to the Philadelphia Housing Authority and had contracted with Haskins and Sells to conduct an audit of its accounts.

[2] 42 U.S.C.A. §3301 et seq.

Under the provisions of this Act, Federal funds were made available to cities in an effort to financially assist them in meeting urban problems. The City of Philadelphia participated in this federally funded program and in turn entered into a contract with the Authority for a manpower training project. The Authority was formed under the provisions of the Housing Authorities Law, Act of May 28, 1937, P. L. 955, 35 P.S. §1541 et seq.[3]

On December 11, 1969, the Board and the Authority entered into a contract wherein the Board agreed to organize public housing tenant councils and to develop job training programs for housing residents, tenant management programs, programs to improve the general services available to public housing residents, and programs leading to individual or cooperative ownership by tenants of their homes in public housing. The Board also agreed to meet regularly to investigate and evaluate tenant arrangement programs and other public housing developments both in and outside of Philadelphia and to submit quarterly program reports and an annual report to the Authority.

The Board agreed to employ a staff consisting, wherever possible, of residents of public housing, to perform at least 5000 man-hours of work in the performance of the above services during the one-year contract term. As compensation, it was agreed that the Board was to receive $25,000 for its services. The contract was automatically renewable for a period of four successive one-year terms and has been renewed upon the same terms and conditions, except that the annual compensation is now $35,000.

---

[3] Section 4(a) of the Housing Authorities Law, 35 P.S. §1544(a), specifically provides that "[e]ach such Authority may be known as the housing authority of the city or the county, as the case may be, but shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function."

In July 1971 the Authority, under a condition of a contract with the Department of Public Welfare of the Commonwealth of Pennsylvania to provide social services to public housing residents throughout Philadelphia, was required to demonstrate tenant involvement in the program's development, policy formulation, operation and evaluation. To do so, the Authority entered into a second contract with the Board, and it identified the Board to the Commonwealth as the organization through which the tenant involvement requirement would be met. To insure tenant involvement, the Authority and the Board agreed that the Board should employ a staff consisting, wherever possible, of tenants of public housing, to establish a coordinating body and systems to insure the requisite tenant involvement, and to furnish evidence that such involvement was taking place. The Board agreed to meet at least monthly with the Authority staff to review the progress of the Authority's social services program, and also to continually evaluate all aspects of the program on behalf of all public housing tenants. The Board agreed to furnish to the Authority quarterly evaluative reports and a yearly final report. The compensation for these services was $20,000.

From this maze of programs and interrelationships of public agencies which receive and expend public funds we ascertain the following distinctive features which are controlling here:

1. The Board is an incorporated nonprofit corporation and not a department, board, or commission of the City of Philadelphia.

2. The Board is not an agency receiving an appropriation from the City of Philadelphia.[4]

---

[4] We view the funds received by the Board as being Federal funds merely passing through the conduit coffers of the City of Philadelphia and the Authority. However, if the City's contention that the funds became City funds upon receipt of them from the Federal Government is correct, then by the same reasoning they be-

3. The City of Philadelphia has no power under the Philadelphia Home Rule Charter to audit the Board's financial records and books.

4. The City of Philadelphia's right to audit does not extend beyond its statutorily defined authority.

The lower court correctly stated the posture here when it wrote that "no matter how delinquent an organization, company or other party may be, the City may not audit it merely because of a contractual relationship, or because some public purpose is involved, or because criminal activity may be occurring, or because public funds have been paid over, in trust or otherwise." For the Controller to have authority under the Charter to audit the Board, it must (1) be an agency, commission, board or department of the City or (2) be receiving appropriations from the City. The Board is not under the control or direction of the City and, more importantly, just does not fall under either of the two categories. We decide only that the Board is not subject to the audit procedures of the City's Charter.[5]

Order reversed.

came funds of the Authority, a state agency, before being paid to the Board. It would then follow that the Board did not receive an appropriation from the City of Philadelphia. *Cf. Hillcrest School, Inc. v. Casey,* 5 Pa. Commonwealth Ct. 626 (1972).

[5] *See Mansel v. Nicely,* 175 Pa. 367, 34 A. 793 (1896) ; *Schuylkill County v. Minogue,* 160 Pa. 164, 28 A. 643 (1894) ; *Schrock v. Buechley,* 53 Pa. D. & C. 440 (1945).