DEPARTMENT OF THE AUDITOR GENERAL, Commonwealth of Pennsylvania; and Auditor General Robert P. Casey, Jr., Petitioners,

v.

STATE EMPLOYEES' RETIREMENT SYSTEM; State Employees' Retirement Board and its chair, Nicholas J. Maiale; Public School Employees' Retirement System; and Public School Employees' Retirement Board and its chair, State Treasurer Barbara Hafer, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2003.

Decided Nov. 25, 2003.

As Amended Dec. 2, 2003.

James M. Darby and Richard D. Spiegelman, Harrisburg, for petitioners.

Edward F. Mannino and Jason A. Snyderman, Philadelphia, for respondents.

Christopher B. Craig, Harrisburg, for intervenor, Senator V. Fumo.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Respondents, State Employees' Retirement System (SERS), State Employees' Retirement Board and its Chair Nicholas J. Maiale, Public School Employees' Retirement System (PSERS) and Public School Employees' Retirement Board and its Chair State Treasurer Barbara Hafer (hereafter Respondents or Funds, respectively) have filed preliminary objections in the nature of a demurrer to the amended petition for review in the nature of an action for declaratory judgment and other relief filed in the Court's original jurisdiction by the Department of the Auditor General and Auditor General Robert P. Casey, Jr., individually and in his official capacity. Senator Vincent J. Fumo has intervened.

I

Preliminary

The question for the Court to decide is whether it must sustain or overrule Respondents' demurrer based on the well-pleaded factual averments of the amended petition for review that Petitioners have the authority to conduct "Special Performance Audits" (hereafter performance audits) of the Funds to review the adequacy of their procedures, among other things, to select, evaluate and retain the approximately 150 external investment managers and consulting firms which are paid approximately $250 million per year to manage and to invest the Commonwealth's retirement system assets of $60 billion. Petitioners base their authority to

conduct the performance audits principally upon Article VIII, Section 10 of the Pennsylvania Constitution, Sections 402 and 403 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 402—403, and historical institutional precedent.

Article VIII, Section 10 of the Constitution provides as follows:

> The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.

> Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction after its occurrence.

Section 402 of The Fiscal Code provides as follows:

> Except as may otherwise be provided by law it shall be the duty of the Department of the Auditor General to make all audits of transactions after their occurrence, which may be necessary, in connection with the administration of the financial affairs of the government of this Commonwealth, with the exception of those of the Department of the Auditor General. It shall be the duty of the Governor to cause such audits to be made of the affairs of the Department of the Auditor General.

> At least one audit shall be made each year of the affairs of every department, board, and commission of the executive branch of the government, and all collections made by departments, boards, or commissions, and the accounts of every State institution, shall be audited quarterly.

> *Special audits* of the affairs of all departments, boards, commissions or officers, may be made whenever they may, in the judgment of the Auditor General, appear necessary, and shall be made whenever the Governor shall call upon the Auditor General to make them. (Emphasis added.)

> Copies of all audits made by the Department of the Auditor General shall be promptly submitted to the Governor.

> Unless the Department of the Auditor General shall fail or refuse to make annual, quarterly, or special audits, as hereinabove required, it shall be unlawful for any other administrative department, any independent administrative board or commission, or any departmental administrative or advisory board or commission, to expend any money appropriated to it by the General Assembly for any audit of its affairs, or, in the case of departments, of any boards or commissions connected with them, except for the reimbursement of the General Fund for audits made by the Department of the Auditor General as provided by law, or for the payment of the compensation and expenses of such auditors as are regularly employed as part of the administrative staffs of such departments, boards, or commissions, respectively.

Section 403 provides as follows:

> The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no

purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.

If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury.

## II

### Factual Averments

The 199–paragraph amended petition identifies the parties and contains the following relevant factual averments. The Department filed this action in its role as the independent fiscal watchdog over the activities and expenditures of Commonwealth agencies and officials pursuant to Article VIII, Section 10 of the Constitution and Sections 402 and 403 of The Fiscal Code. Robert P. Casey, Jr. is the current, and twice elected, Auditor General, and he has been a member of SERS in his official capacity since January 21, 1997. He is not a statutory member of either the SERS Board or the PSERS Board.

SERS is an independent Commonwealth agency which administers the provision of retirement benefits to state employees and elected officials under the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101—5956, and PSERS is an independent agency which administers the provision of retirement benefits to employees under the Public School Employees' Re-

tirement Code, 24 Pa.C.S. §§ 8101—8535. SERS and PSERS finance the retirement benefits through the management and investment of funds contributed by the members' employers, the Commonwealth and its taxpayers, and the Funds are managed by their Boards.

The Department conducts "special audits" pursuant to Section 402 of The Fiscal Code under Generally Accepted Government Auditing Standards (GAGAS), which were promulgated by the U.S. Comptroller General and which cover financial audits, performance audits and audits with combined financial and performance objectives. *See* U.S. General Accounting Office, Government Auditing Standards (1994 Revision as amended). A performance audit is defined under GAGAS as "an objective and systematic examination of evidence for the purpose of providing an independent assessment of the performance of a government organization, program, activity or function in order to provide information to improve public accountability and facilitate decision-making by parties with responsibility to oversee or initiate corrective action." *Id.* § 2.6.

During her tenure as Auditor General, Respondent Hafer conducted performance audits and audits with performance objectives, and consistent with that function she created within the Department a Bureau of Performance Audits. The Department, however, did not conduct performance audits of the Funds during Respondent Hafer's tenure, although in August 1993 and in December 1994 she reserved the statutory right to conduct special audits of the Funds pursuant to Section 402. In January 1985 and in June 1986 Respondent Hafer's predecessors in office also reserved the statutory right to conduct special audits of the Funds pursuant to Sec-

tion 402. *See* Amended Petition, Exhibits E, F.

The performance audits of the Funds are not the same as the annual financial audits of the Funds, which are conducted annually by an independent certified public accounting firm in accordance with 71 Pa. C.S. § 5902(n) and 24 Pa.C.S. § 8502(o). Instead of conducting the annual financial audit itself, the Auditor General reviews the work papers prepared by the Funds' outside auditors who conduct the annual financial audits.

On or about August 15, 2002, the Auditor General notified the Funds of the decision to conduct the performance audits. Over the next several months, the Auditor General attempted to hold audit entrance conferences and otherwise to reach an agreement on the process to be followed and the costs to be incurred in connection with the possible engagement of an outside consultant to assist the Department's professional and skilled audit team only in specific technical areas. The Auditor General proposed to limit the reimbursable costs that may be associated with the outside consultant. No agreement was reached, and on November 8, 2002 the Auditor General issued official audit engagement letters to the Funds setting forth the performance audit objectives.

Failing to achieve the Funds' participation, the Auditor General submitted a letter to them dated December 16, 2002 requesting that they produce eighteen categories of documents by December 27 in connection with randomly selected audit samples of the Funds' investment advisors and consultants retained during the period from July 1, 2000 through June 30, 2002. Amended Petition, Exhibit V. The document request included, among other things, all contracts between the Funds and the firms listed in the audit sample; any and all solicitations to submit bids, proposals or qualifications, including solicitations for sole source procurements that were issued in connection with the awards of the contracts in the audit sample; any and all responses submitted by the audit sample in connection with the solicitations; and any and all reviews/reports used by the Funds to assess or to evaluate the performance of the audit sample.

The Auditor General received a letter dated January 7, 2003 from counsel for the Funds indicating their refusal to provide the requested documents and further indicating their position that the Auditor General lacked the authority to conduct the performance audits. On January 9, 2003, the Auditor General issued subpoenas pursuant to Article VIII, Section 10 of the Constitution, Sections 402, 403 and also Section 1602 of The Fiscal Code, 72 P.S. § 1602, Sections 502 and 520 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 182 and 200, the Act commonly known as the Pennsylvania Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.1—66.9, and Section 563 of the Commonwealth Procurement Code (Procurement Code), 62 Pa.C.S. § 563. The subpoenas were served upon Respondents Maiale and Hafer through the Dauphin County Sheriff's office on January 14, 2003 and commanded them to produce the documents by January 17.

On or about January 15, 2003, the SERS Board voted unanimously to authorize contract negotiations to proceed with the hiring of Independent Financial Services, Inc. (IFS), which was selected by the Funds to conduct their own "fiduciary/performance reviews," or performance audits. On or about January 31, 2003, the PSERS Board voted 13 to 2 to do the same. In the meantime, by letter dated January 17, 2003, counsel for the Funds notified the Auditor General that the Funds would not

comply with the subpoenas to produce the documents, but he offered the Auditor General an opportunity to review the work papers from the Funds' own performance audits.

The amended petition contains three specific counts. In Count I Petitioners seek a declaratory judgment under the Declaratory Judgments Act, 42 Pa.C.S. § 7531—7541, as to their legal authority. Petitioners assert that an actual and justiciable controversy now exists, and they aver that the controversy has impaired their ability to conduct the performance audits and threatened their ability to conduct other independent performance audits as well. Petitioners request a declaration that they have the legal authority to conduct performance audits of the Funds, an order for Respondents to produce the requested documents and to consent to and cooperate with the performance audits and an order prohibiting Respondents from proceeding with their own proposed performance audits.

In Count II Petitioners request an order in the nature of mandamus commanding Respondents to produce copies of the requested documents and to consent to and cooperate with the performance audits. In particular, Petitioners aver that the documents comprise procurement records as defined by the Procurement Code. They assert this claim under Section 563, which requires that all procurement records be retained for at least three years from the date of final payment under a contract and that such records shall be made available to the Auditor General upon request. In Count III Petitioners aver that the Auditor General has standing individually and in his official capacity to pursue surcharges against individual Board members who have breached their fiduciary obligations to the members of SERS and PSERS sufficient to reimburse the Funds all monies expended in violation of Section 402 of The Fiscal Code.

## III

### Demurrer

First, Respondents argue that based on their exclusive management, control and fiduciary obligations they have broad powers to conduct their own independent performance audits, and pursuant to this power they have engaged IFS to conduct the audits. Citing *Hillcrest School, Inc. v. Casey,* 5 Pa.Cmwlth. 626 (1972), among other cases, Respondents contend that Sections 402 and 403 of The Fiscal Code merely allow the Auditor General to conduct financial statement audits to verify that monies received are expended as indicated on financial statements and also that the Auditor General does not have unfettered authority to examine any records that his staff may desire. Furthermore, they assert that Article VIII, Section 10 of the Constitution provides no authority for performance audits of state agencies nor confers subpoena power in the Auditor General. Respondents recognize that no Pennsylvania court has ever decided the issue here, but they nevertheless maintain that neither prior performance audits of predecessor administrations nor cooperation by the Funds in allowing the Auditor General to review the work papers from their annual financial statement audits supports the Auditor General's claim of authority to conduct performance audits.

Second, Respondents demur on the basis of the exclusive statutory management and control delegated to the Funds, which they insist empowers the Funds to conduct their own lawful performance audits and to engage their own investment advisors and counselors, *see* 71 Pa.C.S. §§ 5902(b), 5931; 24 Pa.C.S. §§ 8502(b), 8521. Invoking rules of statutory construction, Respondents claim that their

specific statutory authority supersedes any general auditing powers of the Auditor General under The Fiscal Code. Moreover, the performance audits are not special audits as contemplated by Section 402 inasmuch as they merely relate to financial audits not regularly scheduled, and they cannot exceed the scope of audits of the financial affairs of government.

Third, Respondents allege that the Auditor General suffers from a perceived or likely conflict of interest, which purportedly taints his independence to conduct the performance audits of the Funds even assuming that he had such authority. They rely on campaign contribution information from campaign finance reports filed by the Auditor General with the Pennsylvania Department of State in connection with the campaigns for Auditor General or for Governor since 2000, and they note that contributions came from employees, principals or political action committees of specific investment management firms whose engagement might be included in the Auditor General's performance audits.

Fourth, Respondents demur based on their conclusion that to submit to the performance audits would force Respondents to breach their fiduciary obligations to members of the Funds because they would be liable for potentially inappropriate and unlimited costs related to the Auditor General's engagement of outside consultants, resulting in a waste of Fund assets particularly when the Funds have IFS to conduct their own performance audits. Respondents cite, among other sources, *White v. Panic*, 783 A.2d 543 (Del.2001), where the court held that corporate waste claims may be sustained where the plaintiff shows that corporate assets were irrationally squandered, and they compare the expertise of IFS to the expertise of the Department's professional staff and then contend that because IFS has greater expertise it is better suited to conduct the performance audits.

Fifth, Respondents demur specifically to Count II of the amended petition on the basis that the Auditor General has no subpoena power under Section 563 of the Procurement Code to compel the production of documents from the Funds. The subpoenaed documents are not within the scope of Section 563 and do not pertain to the Auditor General's statutory authority to conduct financial audits. Because Section 102 of the Procurement Code, *as amended*, 62 Pa.C.S. § 102, excludes from its coverage contracts for the investment of funds, the Auditor General is precluded from securing those documents even though the Auditor General has requested specific contracts in connection with the audit samples. Moreover, the Boards are covered by a *"blanket approval for sole source procurement when choosing investment advisors and managers,"* see Respondents' Brief at p. 26 (citing Section 515(8) of the Procurement Code, 62 Pa. C.S. § 515(8)), and, as a result, there is no competitive procurement process and no corresponding procurement records. Assuming that the Auditor General is entitled to any information at all, Respondents would limit production to the names of the investment advisors and consultants, the amount and type of each contract and a list of services provided under each pursuant to Section 564, 62 Pa.C.S. § 564.

Sixth, Respondents cite *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), to support their demurrer to Count III of the amended petition on the basis that the Auditor General lacks standing in his individual or in his official capacity to pursue surcharges against individual Board members. Because the Auditor General is not an investor, beneficiary or member of PSERS nor has he alleged an immediate,

substantial or direct injury to his interest with respect to SERS, which is a defined benefit plan, the Auditor General cannot pursue surcharges against Board members, and he cannot, as a matter of law, impose a surcharge upon individuals not personally named as defendants. *See, e.g., DeMarco v. DeMarco*, 787 A.2d 1072 (Pa.Super.2001) (in defined benefit plan employer promises particular benefit calculated by formula defined in pension provisions and paid at retirement); *Youngman v. CAN Ins. Co.*, 401 Pa.Super. 381, 585 A.2d 511 (1991) (personal liability of school board member precluded when action filed against member in his official capacity).

### IV

### Responses to Demurrer

Petitioners argue that Respondents have failed to satisfy their burden to demonstrate that the law says with certainty that the Auditor General lacks the authority to conduct the performance audits of the Funds. Special audits of boards, commissions or officers are authorized under Section 402 of The Fiscal Code, and audits of the accounts and records of every public agency receiving state funds are authorized under Section 403, and audits of all boards, commissions, agencies and other government entities are to be conducted under generally accepted auditing standards under Article VIII, Section 10 of the Constitution. Petitioners note that the performance audits of the Funds are similar to other performance audits that the Department has conducted under the special audits provisions of Section 402, which allow special audits of the affairs of all departments, boards, commissions or officers when they appear necessary in the judgment of the Auditor General. Petitioners indicated that the only Pennsylvania case to determine the scope of a special audit is *Klenk v. Rizzo*, 3 Phila.Co.Rptr. 438 (Pa.Com.Pl.1977), *aff'd per curiam on trial court opinion*, (Pa.Cmwlth. Nos. 1327, 1341 C.D.1978, filed October 11, 1979), in which the common pleas court reasoned that the term includes something more than mere examination or verification of financial accounts and records.

Relying, in part, upon *Bethenergy Mines, Inc. v. Department of Environmental Protection*, 676 A.2d 711 (Pa. Cmwlth.1996), Petitioners submit that the Auditor General's interpretation of its authority is entitled to deference unless the interpretation is patently incorrect, unreasonable or arbitrary. In that regard, the historical practice of the Department over the past thirty years in conducting performance audits adds support to their argument that authority exists to conduct the performance audits of the Funds.[1]

Petitioners next argue that Respondents have failed to offer any authority to back up their claim that the Auditor General's power is limited solely to financial statement audits. They contend that Sections 402 and 403 were enacted together as part of The Fiscal Code and that the legislature had no reason to enact Section 402 if its sole intent was to limit the Auditor General to financial statement audits. Also Article VIII, Section 10 of the Constitution governs audits of *"the financial affairs"* of state government, which of necessity seeks

---

**1.** Petitioners have observed Respondents' references throughout their preliminary objections and their brief to the term "fiduciary/performance reviews," which is terminology that Respondents developed but have not defined and that Petitioners never used during these proceedings or in connection with the performance audits. The amended petition uses the term "special performance audits," which is an accepted government auditing term and should be the recognized terminology.

to determine whether taxpayers are getting their money's worth from a publicly-funded program. Moreover, the incorporation of GAGAS into Section 10 satisfies the view that the framers of the Constitution intended an audit to reflect current auditing practices.

Petitioners maintain that the Funds' exclusive management powers do not supersede the Auditor General's authority to conduct the performance audits. Specifically, Section 402 of The Fiscal Code precludes independent administrative boards from expending legislative appropriations to audit the Funds' affairs unless the Auditor General shall fail or refuse to conduct such audits. Because the Funds sought to conduct their own performance audits and failed to honor the Auditor General's right of first refusal, the Funds' efforts to conduct their own audits are unlawful. Also their duty to obtain an annual financial audit by an independent certified public accounting firm under 71 Pa.C.S. § 5902(n) does not supersede the Auditor General's audit authority or authorize the Funds to retain IFS.

Notwithstanding Respondents' claims regarding the Auditor General's alleged conflict of interest or lack of his independence in connection with the performance audits, which Petitioners contend they rebutted by the averments of the amended petition, those claims in no way affect the legal authority of the Auditor General to conduct the audits. The Auditor General does not seek to conduct performance audits of the investment advisors and consultants but instead of the Funds themselves, which will include among other objectives an examination of the Funds' selection and monitoring of the investment advisors and consultants. Petitioners, nonetheless, argue that Respondents have improperly raised new facts and substantive responses to the amended petition that the Court may not consider. *See Lewin v. State Board of Medicine,* 112 Pa.Cmwlth. 109, 535 A.2d 243 (1987).

Petitioners reject the notion that the Auditor General's scrutiny of the Funds' operations and Respondents' cooperation with the performance audits would somehow impede them in the fulfillment of their fiduciary obligations. In support they cite *Westly v. California Public Employees' Retirement System Board of Administration,* 105 Cal.App.4th 1095, 130 Cal. Rptr.2d 149 (2003), where the court rejected a state retirement board's contention that, because of its exclusive management and control over administration of the retirement system, it could not comply with its fiduciary duties if it followed the constitutional and statutory provisions at issue, and it held that the board must perform its fiduciary duties within the applicable law. To resolve Respondents' fiduciary-duty claims here, the Auditor General proposed that the Funds pay for only those costs related to the Auditor General's engagement of a consultant even though Section 402 and Section 408 of The Fiscal Code, 72 P.S. § 408, authorized reimbursement for all audit costs.

With regard to Count II of the amended petition seeking mandamus relief, Petitioners request the Court to order the Funds to provide the requested documents and to consent to and cooperate with the performance audits. Pursuant to Section 102(a) of the Procurement Code, 62 Pa. C.S. § 102(a), every expenditure of state funds, other than the investment of funds, by Commonwealth agencies is covered by the Procurement Code, and even though the code may not apply to the expenditure of agency funds through direct investments it does indeed apply to the expenditures for services, which include asset management or investment advice. The Funds, therefore, are required to produce

the documents and to cooperate with the performance audits under Section 502 of The Administrative Code of 1929. In *Holloway v. Lehman*, 671 A.2d 1179 (Pa. Cmwlth.1996), the Court held that mandamus may lie to compel the performance of a ministerial duty when the petitioning party demonstrates a clear right to relief, a corresponding clear duty on the part of the party against whom mandamus is sought and a want of any other adequate remedy. The Auditor General states that it would have no other adequate remedy at law if the Court were to refuse mandamus relief. In addition, Count II is not an attempt to enforce subpoena powers as Respondents argue.

As to Count III of the amended petition, Petitioners request the Court to impose surcharges on those Board members who breached their fiduciary obligations by expending retirement system assets to pay consultant fees for the Funds' own proposed performance audits. However, if the amended petition is defective because Petitioners did not name all Board members individually, then Count III should proceed solely against Respondents Hafer and Maiale. Moreover, the Auditor General has standing to pursue the surcharges in his official capacity as the head of the Department and in his individual capacity as a member of SERS. Citing *Wm. Penn Parking Garage*, Petitioners argue that they have a substantial, direct and immediate interest in this matter by virtue of the

Funds' efforts to impair or impede the performance audits and their interference with the constitutional system of checks and balances. They concede that Respondents' demurrer may be moot because the Attorney General has refused to approve the IFS contract.

Intervenor states that the central issue in this lawsuit concerns the scope of the Auditor General's constitutional and statutory authority to audit the financial affairs of state entities along with the legal right of the Auditor General to demand and to receive documents from Respondents to conduct the independent performance audits as well as the statutory duty imposed on the Boards to act with prudence in performing their fiduciary duties. Intervenor reiterates that broad auditing authority is conferred upon the Auditor General to conduct not only financial statement audits but to conduct performance audits of publicly-funded entities as well under GAGAS and consistent with the Commonwealth's system of financial checks and balances. This constitutional system is designed to promote public accountability in the administration of public resources and is particularly significant under the circumstances in view of published reports of the Funds' loss of over $20 billion in value within the past two years. Intervenor takes no position on the legality of the surcharges against Board members.[2]

---

2. Respondents raise two new arguments in their Amended Reply Brief, which was restricted by order of the Court to the first five pages of their suppressed Reply Brief. They argue that because Article VIII, Section 10 of the Constitution authorizes audits of state agencies pursuant to generally accepted auditing standards only, this constitutional limitation lends support to their position that the Auditor General lacks authority to conduct the performance audits. The term generally accepted auditing standards applies solely to financial audits whereas the GAGAS, followed

by the Auditor General, applies to financial and performance audits and did not even exist at the time Article VIII, Section 10 was adopted. They also argue that the Department lacks standing to pursue surcharges against Board members because its overall auditing function has not been harmed in any way.

Petitioners note in their Sur–Reply Brief that the drafters of Article VIII, Section 10 explained that the term generally accepted auditing standard would permit an evaluation

V

Discussion

 In ruling on preliminary objections in the nature of a demurrer, courts must determine whether the law says with certainty, based on well-pleaded factual averments of the Petitioners, that no recovery or relief is possible. *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa.Cmwlth.1996). Any doubt must be resolved in favor of the non-moving party by refusing to sustain the preliminary objections. *Boyd v. Ward,* 802 A.2d 705 (Pa.Cmwlth.2002). When the motion is in the nature of a demurrer, all of the non-moving party's well-pleaded averments in the complaint must be viewed as true, and only those facts specifically admitted may be considered against the non-moving party. *Ridge v. State Employees' Retirement Board,* 690 A.2d 1312 (Pa.Cmwlth.1997).

 When construing and interpreting constitutional provisions that apply in cases where a ruling has not yet been made by courts of the Commonwealth on the particular issue to be decided, courts should consider the text of any Pennsylvania constitutional provision implicated, examine the history of the provision including case law, consider related case law from other jurisdictions and look at policy considerations that are unique to Pennsyl-

vania. *Commonwealth v. Cleckley,* 558 Pa. 517, 738 A.2d 427 (1999). In *Pennsylvania Prison Soc'y v. Commonwealth,* 565 Pa. 526, 776 A.2d 971 (2001), the Pennsylvania Supreme Court observed that when interpreting constitutional language courts must look not only to the letter of the words but also to the spirit behind them. In *Zemprelli v. Thornburg,* 47 Pa.Cmwlth. 43, 407 A.2d 102 (1979), this Court noted the rule that when interpreting constitutional language courts must interpret such language in its popular sense as the voters must have understood it when they voted upon it.

When construing and interpreting statutory language, the Court should be guided by the rules of statutory construction. One rule states that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." *See* Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903. Other well-settled principles state that every word, sentence or provision in a statute is intended by the legislature for some purpose and must be given effect, *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A.2d 199 (1963), and that the legislature intended different meanings when it enacted two separate provisions at the same time, Section 1922,

of whether expenditures have been made consistent with legislative intent and whether state moneys were being spent "effectively and efficiently." *See* Journal of Constitutional Convention, Vol. 1, No. 39 at 609. *Compare* GAGAS, §§ 2.6—2.9 (1994 Revision as amended) (performance audits determine effectiveness and efficiency of public-funded programs and compliance with legal requirements). *See also* Journal, Vol. 1, No. 39 at 605, quoting the principal author: "We see the governmental audit as a financial audit plus an operational or management or performance audit.... [O]ur viewpoint is that an

examination of operations is a natural extension of any financial audit." In Petitioners' view, the drafters' words demonstrate that they did not intend to exclude performance audits when using the term financial affairs in Article VIII, Section 10. Petitioners dispute that the Department lacks standing to pursue the surcharges, and they also note that the Governor's recent audit of the Department of the Auditor General is significant in that the Governor's auditor labeled the audit as a "performance audit" of the Department pursuant to Section 402 of The Fiscal Code.

1 Pa.C.S. § 1922; *Shawnee Development, Inc. v. Commonwealth,* 799 A.2d 882 (Pa. Cmwlth.2002), *aff'd,* 572 Pa. 665, 819 A.2d 528 (2003). *See also* Section 1921(c)(8), 1 Pa.C.S. § 1921(c)(8) (legislative intent may be ascertained by considering administrative interpretations); *Bethenergy Mines.*

The Court has examined carefully the text of the language in Article VIII, Section 10 of the Constitution, which commands the audit of the financial affairs of state government in order to provide a constitutional system of checks and balances within the Commonwealth. *See Jannetta v. Knoll,* 129 Pa.Cmwlth. 458, 566 A.2d 330 (1989), *aff'd,* 527 Pa. 358, 591 A.2d 1052 (1991). Although no Pennsylvania state court has decided the issue in this case, related case law does exist in another jurisdiction involving the question of a state Comptroller's authority to conduct performance audits of municipal agencies when neither the state constitution nor state statutes expressly defined the scope and type of audits that the Comptroller could conduct. That question was decided in *McCall v. Barrios–Paoli,* 93 N.Y.2d 99, 688 N.Y.S.2d 107, 710 N.E.2d 671 (1999).

In circumstances similar to those here, the Comptroller over several months sought disclosure and production of information and documents from the six agencies involved. They contended that the Comptroller lacked the authority to inquire into their management and operations and that the proposed performance audits were politically motivated. The agencies denied access to worksites and otherwise refused to comply with the requests contained in the Comptroller's audit engagement letters. The Comptroller then issued subpoenas and sought judicial intervention when the agencies refused to comply. The Supreme Court upheld the subpoenas after concluding that the audits pertained to agency activities, which had a

clear and direct relationship to the financial condition and use of municipal resources, and that any such inquiry included an examination and evaluation of the efficiency and economy of the financial condition and use of municipal resources.

On final review the Court of Appeals affirmed after analyzing article V, § 1 of the state constitution, which authorized the legislature to assign to the Comptroller supervision over the "accounts" of any political subdivision of the state along with administrative duties that may be incidental to the performance of those functions, and Section 34 of the General Municipal Law, which authorized the Comptroller "to examine into the financial affairs of every such municipal corporation." The agencies argued that the absence of explicit language which authorized the Comptroller to conduct the performance audits buttressed their argument that the Comptroller had no authority to audit anything other than the agencies' financial matters. The Court of Appeals disagreed that the meaning of the term "accounts" was so precise that it precluded performance audits. It stated:

[U]se of the word "accounts" and the phrase "supervision of the accounts" in article V, § 1 does not restrict the Comptroller to financial audits or preclude inquiry into the efficiency and effectiveness of the City's expenditure of State funds. Authority to supervise the accounts of the State's political subdivisions leaves ample room for wider inquiry by the Comptroller.

Nor does our constitutional history evince an intent to so limit the Comptroller's core authority to financial audits. Review of the duties performed by the Comptroller prior to, contemporaneously with and after adoption of article V, § 1 makes clear that authority to supervise "accounts" has never been confined to examinations of a municipali-

ty's financial records but has included the broader inquiry contemplated by performance audits.

. . . .

Rather than an intent to limit the Comptroller's core functions, article V, § 1 had as its object protection of the independent character of the Comptroller's audit function.

*McCall,* 93 N.Y.2d at 106–107, 688 N.Y.S.2d at 111, 710 N.E.2d at 674. The court concluded that the constitution allowed the delegation of authority to conduct performance audits of political subdivisions, and in analyzing the statutory authority it observed:

Like the Constitution, the General Municipal Law neither explicitly authorizes nor explicitly prohibits performance audits. Unlike the Constitution, however, the General Municipal Law provides certain particularity as to the State Comptroller's powers. Sections 33 and 34 expressly authorize the Comptroller to examine the accounts of all municipal officers to inquire into the "financial condition," "resources" and "method and accuracy of [the] accounts" of any municipal corporation, and to examine into its "financial affairs." Clearly these powers go beyond the verification of financial records and internal controls. As noted in *Ronan v. Levitt,* 42 A.D.2d 10, 12, 344 N.Y.S.2d 624, *lv. denied,* 33 N.Y.2d 514, 347 N.Y.S.2d 1027, 301 N.E.2d 557, interpreting analogous statutes, "courts of this State have been extremely liberal in construing legislation designed to provide a system of financial checks and balances, particularly in the area of governmental agencies and public authorities."

*Id.* at 108, 688 N.Y.S.2d at 112, 710 N.E. 2d at 675. The court determined that the framers took no action to limit or to restrict the Comptroller's core authority solely to financial audits as opposed to the broader authority and discretion required

when the Comptroller inquires into the financial condition and resources, or financial affairs, of public agencies. The court also indicated that over the past twenty-five years the Comptroller had conducted hundreds of performance audits in accordance with GAGAS.

In *Klenk v. Rizzo* the court interpreted the term special audit as used in Section 6–400(c) of the Philadelphia Home Rule Charter. That case involved a mandamus action filed by the Philadelphia Controller to resolve issues surrounding the scope of the Controller's auditing authority. The Controller initiated discretionary operational audits of certain city departments, but counsel for the director of finance concluded that the audits were beyond the scope of the Controller's authority and refused to comply. The Controller asserted his authority pursuant to Section 6–400(c), (d) of the Charter. Section 6–400(c) provided in part: "Audits of the Financial Affairs of Officers, Departments, Boards, Commissions and other agencies: Special audits of the affairs of any officer, department, board, commission or agency may be made whenever in the judgment of the City Controller they may appear necessary . . . ."

The court concluded in *Klenk* that the word "audit" as used in Section 6–400 of the Charter apparently referred to more than mere examination and verification of financial accounts as counsel for the director had suggested. Based on the Controller's authority in Section 6–400(d) to make recommendations for improvements in the agencies' efficiency and economy in their operations and authority in Section 6–400(c) to make special audits of the affairs of city officers, departments, boards, commissions or agencies, the court concluded that the Controller's discretion applied to the scope, as well as to the timing, of the audits because the

terms affairs and operations have a broader meaning than merely financial accounting. The court relied on rules of statutory construction to conclude that the term special audit had a specific technical meaning and should be understood in the context of the accounting profession and that the framers of the Charter intended the auditing department to conduct such audits consistent with "prevailing standards and practices utilized by accountants." *Klenk,* 3 Phila.Co.Rptr. at 444. It held that the operational audits were synonymous with efficiency and economy audits and constituted a form of special audits.

■ The courts' reasoning in *McCall* and in *Klenk* is both persuasive and logical. Article VIII, Section 10 of the Pennsylvania Constitution commands audit of the financial affairs of state-funded or financially aided entities and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth in accordance with generally accepted auditing standards. Pursuant to *McCall,* an audit of an agency's financial affairs connotes something more than mere examination of financial accounts or records; rather it entails broader inquiry as contemplated by the performance audits. The common pleas court in *Klenk* concluded that the term "affairs" has a broader meaning than simply financial accounting, that the term "special audit" should be understood in the context of the accounting profession and that an operational, or performance, audit is a form of special audit.[3]

In Section 402 of The Fiscal Code, the legislature authorized the Auditor General to conduct special audits of the affairs of all departments, boards, commissions or officers when they may appear necessary to the Auditor General and provided that unless the Auditor General fails or refuses to conduct annual, quarterly or special audits it shall be unlawful for any department, board, commission or officer to expend legislative appropriations to conduct an audit of its own affairs. In Section 403 the legislature authorized the Department to audit the accounts and records of any person, association, corporation or public agency receiving state appropriations, or entitled to same, to ensure the Department that state funds are being properly expended.

■ In this regard, the Court may consider and give weight to the official opinion of the Attorney General, which refused to approve the Funds' proposed contracts with IFS. *See Herskovitz v. State Civil Service Commission,* 111 Pa.Cmwlth. 427, 534 A.2d 160 (1987) (courts customarily afford great weight to official opinions of the attorney general). The Attorney General's official opinion was submitted to the General Assembly pursuant to Section 204(b) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended,* 71 P.S. § 732–204(b), and it states:

We have given careful review to proposed Contract # 2003–470, by which the State Employees Retirement System (SERS) [and Public School Employees' Retirement System (PSERS) ] would retain Fiduciary Services Inc., to

---

**3.** Contrary to Respondents' arguments, the Court in *Hillcrest School* did not limit the scope of the Auditor General's authority to financial statement audits only. Rather the Court held that, while the Auditor General was not given *carte blanche* authority to audit any and all records that Department staff

desired, the Auditor General was authorized to audit purchased services paid for with state funds and further that the audit was limited to whether the services listed in invoices to the Department of Welfare were actually provided and were provided under the law.

perform a 'fiduciary audit' of SERS [and PSERS].

. . . .

Our determination is that the proposed contract is barred by Section 402 of the Fiscal Code, 72 P.S. § 402, which prohibits an independent administrative board from expending any funds appropriated to it by the General Assembly for an audit of its affairs unless the Department of the Auditor General shall fail or refuse to conduct such audit. We appreciate that SERS [and PSERS], in the matter pending in Commonwealth Court, has challenged the applicability of that provision to its proposed fiduciary audit, but we are obliged to observe its terms unless and until a court rules it inapplicable.

*See* 187 Legislative Journal of the Senate of Pennsylvania, 368 (April 28, 2003). The Court may take judicial notice of the General Assembly's legislative journals. *De-Weese v. Weaver*, 824 A.2d 364 (Pa. Cmwlth.2003). Based on the foregoing discussion, the Court must overrule Respondents' demurrer to Count I.

■ In connection with Count II in mandamus, the Auditor General cited the following statutory provisions as added support for the demand for documents and the right to secure cooperation from the Funds. Section 1602 of The Fiscal Code confers power in the Auditor General, inter alia, to compel the production of all official or public books, accounts, documents or papers deemed necessary in connection with the examination and adjustment of public accounts; Sections 502 and 520 of The Administrative Code of 1929, respectively, impose a duty of cooperation on any department, board or commission upon which demand is made for data or information and confer subpoena power in the Department to require the production of documents for examination; Section 563

of the Procurement Code requires that all procurement records, including determinations issued under Section 561, 62 Pa.C.S. § 561, relating to finality of determinations, shall be retained for at least three years from the date of final payment under the contract and shall be made available to the Auditor General under request; and Section 1 of the Right–to–Know Act, 65 P.S. § 66.1, requires production of any contract dealing with the receipt or disbursement of funds by an agency.

The Auditor General notes that although the Procurement Code may not apply to the expenditure of agency funds through direct investments pursuant to Section 102(a), the Code does indeed apply to agency expenditures for services including those for asset management or investment advice, despite Respondents' arguments to the contrary. Moreover, sole source procurements do produce procurement records subject to disclosure under Section 563, and the Department is not limited solely to those documents that are listed in Section 564. The term procurement is defined in Section 103, *as amended*, 62 Pa.C.S. § 103:

Buying, purchasing, renting, leasing, licensing or otherwise acquiring any supplies, services or construction. The term also includes all functions that pertain to the obtaining of any supply, service or construction, including description of requirements, selection and solicitation of sources, preparation and award of contract and all phases of contract administration.

This provision expressly defines procurement as including the purchasing or acquiring of any services and all functions that pertain to the purchasing or acquiring of such services, which augments the Auditor General's position that since the requested documents related to services purchased or acquired by Respondents, the

Auditor General is entitled to their production.

■ While mandamus does not lie to compel a government body which is vested with discretionary authority to use it in a particular manner, mandamus is appropriate to compel a government body to perform a discretionary act when it has a legally mandated duty to perform such act and has refused to do so. *Hugie v. Horn,* 730 A.2d 1042 (Pa.Cmwlth.1999). Because of the requirements imposed upon state entities in Section 563 of the Procurement Code and Sections 502 and 520 of The Administrative Code of 1929, the Court rejects Respondents' argument that the law without any doubt precludes the Auditor General from obtaining the documents. The Court, likewise, overrules Respondents' demurrer to Count II.

■ Finally, in connection with Count III of the amended petition, the Court cannot agree that the Auditor General lacks standing even in his official capacity to pursue surcharges against Board members. *See Wm. Penn Parking Garage; Rizzo v. City of Philadelphia,* 136 Pa.Cmwlth. 13, 582 A.2d 1128 (1990) (standing conferred when litigant establishes requisite substantial, direct and immediate, rather than remote, interest in a case and standing also conferred when improper government action may otherwise be left unchallenged). However, because Petitioners failed to name individually all

of the Board members, the Court is precluded from granting relief as to them. *See In re Church of St. James the Less,* 833 A.2d 319 (Pa.Cmwlth.2003) (court lacks jurisdiction to impose sanctions on persons not named as defendants and served in the proceedings). Furthermore, the Court cannot agree that a viable surcharge claim exists as to those Board members individually named because the question of the improper expenditure of retirement system assets was rendered moot when the Attorney General refused to approve the IFS contract. *See Consolidation Coal Co. v. District 5, United Mine Workers of America,* 336 Pa.Super. 354, 485 A.2d 1118 (1984) (court need not resolve legal issue rendered academic due to change in circumstances).[4] Thus the Court sustains the demurrer to Count III.

In summary, Respondents have demurred to the amended petition based on their arguments that Petitioners have no constitutional or statutory authority to conduct the performance audits of the Funds and, essentially, that the Boards have sole discretion within their exclusive management and control of the Funds to conduct their own performance audits. Petitioners rely principally upon Article VIII, Section 10 of the Constitution and Sections 402 and 403 of The Fiscal Code to support their claim of authority to conduct the performance audits. In their Sur-Reply Brief, Petitioners recited comments

---

4. Respondents included the conflict of interest issue in their preliminary objections even though no averments were made about campaign contributions in the amended petition. They therefore improperly injected new facts and issues at the demurrer stage of these proceedings, "which would more appropriately appear in an Answer...." *Lewin,* 112 Pa.Cmwlth. at 115, 535 A.2d at 245. Petitioners and Intervenor responded in any event by noting that nine members of the Boards are elected public officials, including elected members of the Pennsylvania House of Repre-

sentatives and Senate and State Treasurer Hafer, who have received campaign contributions from financial service providers as well as other sources. Because there is no allegation that the Auditor General violated the Public Official and Employee Ethics Act, 65 Pa.C.S. § 1101—1113, which governs public official conflicts of interest in the performance of their duties, nor an allegation that he violated the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600—3591, no legal basis exists for the conflict of interest claim.

from the principal drafters of Article VIII, Section 10 to aid in the interpretation of this constitutional provision. *See* n1 supra. They rely, in addition, on the extensive institutional history of the Department in conducting performance audits, and they request the Court to accord weight to the official opinion of the Attorney General disapproving the Funds' proposed contract with IFS because it was barred by Section 402.

 After considering the standards that apply when ruling on preliminary objections in the nature of a demurrer and the exhaustive briefs and materials submitted in support of the demurrer and in opposition thereto, the Court cannot conclude that the law says with certainty that the well-pleaded factual averments of the amended petition, when accepted as true, would be insufficient to establish any right to declaratory or other relief if Petitioners were to succeed in proving those facts. The fundamental purpose of the Declaratory Judgments Act is to declare the legal rights and duties of the parties and to afford relief from uncertainty in connection with those rights and duties. *Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000). In *Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984), the Supreme Court held that the dismissal of a petition for review would be improper if any theory of the law will support the claims raised in the petition. The Court, accordingly, overrules Respondents' preliminary objections in the nature of a demurrer to Count I and Count II of the amended petition, and it sustains the demurrer to Count III of the amended petition.

Judge SIMPSON did not participate in the decision in this case.

## ORDER

AND NOW, this 25th day of November, 2003, the Court hereby overrules Respondents' preliminary objections in the nature of a demurrer to Counts I and II of the amended petition for review and sustains the preliminary objections to Count III of the amended petition in accordance with the foregoing opinion.