**DEPARTMENT OF the AUDITOR GENERAL, Commonwealth of Pennsylvania; and Auditor General Robert P. Casey, Jr., Petitioners**

v.

**STATE EMPLOYEES' RETIREMENT SYSTEM; State Employees' Retirement Board and its chair, Nicholas J. Maiale; Public School Employees' Retirement System; and Public School Employees' Retirement Board and its chair, State Treasurer Barbara Hafer, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2004.

Decided Oct. 15, 2004.

Richard D. Spiegelman, Harrisburg, for petitioners.

Edward F. Mannino, Philadelphia, for respondents.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–RIBNER.

In this action brought in the Court's original jurisdiction seeking a declaratory judgment and other relief, the Department of the Auditor General (Department) and Auditor General Robert P. Casey, Jr. individually and in his official capacity (together, Petitioners) have filed their motion for summary relief on Count I of the amended petition for review, which was filed with the Court on March 5, 2003. Intervening

Petitioner Sally J. Turley joins in this motion.

I

The factual allegations and earlier procedural history of this dispute were set forth at length in the opinion in *Department of Auditor General v. State Employees' Retirement System,* 836 A.2d 1053 (Pa. Cmwlth.2003) (*Auditor General I*), where the Court ruled on preliminary objections filed to Petitioners' amended petition for review and overruled a demurrer to Count I. In Count I of their amended petition for review Petitioners requested a declaration that they have the legal authority to conduct special performance audits of the State Employees' Retirement System and the Public School Employees' Retirement System (SERS and PSERS, respectively; together, Funds) to review the adequacy of their procedures, among other things, to select, evaluate and retain the approximately 150 external investment managers and consulting firms paid substantial sums yearly to invest the state's retirement system assets of $60 billion. Respondents include the Funds, along with the State Employees' Retirement Board and its chair Nicholas J. Maiale and the Public School Employees' Retirement Board and its chair State Treasurer Barbara Hafer.

Count I also requested that Respondents be ordered to produce copies of the documents necessary to conduct the performance audits of the Funds, that Respondents be ordered to cooperate with the audits and that Respondents be prohibited from expending money entrusted to them to conduct their own allegedly unlawful audits.[1] Petitioners claimed au-

---

1. In Count II Petitioners requested that the Court command Respondents in the nature of mandamus to produce copies of the requested documents and to consent to and cooperate in the conduct of the performance audits.

Count III sought surcharges against individual Board members who allegedly breached their fiduciary obligations to the members of the Funds.

thority to conduct performance audits under Article VIII, Section 10 of the Pennsylvania Constitution, Sections 402 and 403 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 402 and 403, and historical precedent.[2]

Respondents demurred to Count I of the amended petition for review first on the contention that Article VIII, Section 10 of the Constitution and Sections 402 and 403 of The Fiscal Code merely authorize financial statement audits, not performance au-

---

2. Article VIII, Section 10, headed "Audit," provides as follows:

> The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.
>
> Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction after its occurrence.

Section 402 of The Fiscal Code provides as follows:

> Except as may otherwise be provided by law it shall be the duty of the Department of the Auditor General to make all audits of transactions after their occurrence, which may be necessary, in connection with the administration of the financial affairs of the government of this Commonwealth, with the exception of those of the Department of the Auditor General. It shall be the duty of the Governor to cause such audits to be made of the affairs of the Department of the Auditor General.
>
> At least one audit shall be made each year of the affairs of every department, board, and commission of the executive branch of the government, and all collections made by departments, boards, or commissions, and the accounts of every State institution, shall be audited quarterly.
>
> *Special audits* of the affairs of all departments, boards, commissions or officers, may be made whenever they may, in the judgment of the Auditor General, appear necessary, and shall be made whenever the Governor shall call upon the Auditor General to make them. (Emphasis added.)
>
> Copies of all audits made by the Department of the Auditor General shall be promptly submitted to the Governor.
>
> Unless the Department of the Auditor General shall fail or refuse to make annual, quarterly, or special audits, as hereinabove required, it shall be unlawful for any other administrative department, any independent administrative board or commission, or any departmental administrative or advisory board or commission, to expend any money appropriated to it by the General Assembly for any audit of its affairs, or, in the case of departments, of any boards or commissions connected with them, except for the reimbursement of the General Fund for audits made by the Department of the Auditor General as provided by law, or for the payment of the compensation and expenses of such auditors as are regularly employed as part of the administrative staffs of such departments, boards, or commissions, respectively.

Section 403 of The Fiscal Code, relating to audits of agencies receiving State aid, provides:

> The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.
>
> If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that improperly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury.

dits. Second, they claimed that the exclusive management and control delegated to the Funds, specifically in Sections 5902(b) and 5931 of the State Employees' Retirement Code, *as amended,* 71 Pa.C.S. §§ 5902(b) and 5931, and Sections 8502(b) and 8521 of the Public School Employees' Retirement Code, *as amended,* 24 Pa.C.S. §§ 8502(b) and 8521, authorized them to conduct their own performance audits and to engage their own investment advisors and counselors. Third, they alleged that the Auditor General suffered from a perceived or likely conflict of interest based upon campaign contribution information; and, fourth, they argued that to submit to the audits would breach their fiduciary duties to members of the Funds and leave them liable for potentially unlimited costs, resulting in a wasting of Fund assets.

The Court in *Auditor General I* noted that in ruling on preliminary objections in the nature of a demurrer courts must determine whether the law says with certainty, based upon the well-pleaded factual averments of the petitioners, that no recovery or relief is possible. *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa.Cmwlth.1996). *See also Boyd v. Ward,* 802 A.2d 705 (Pa.Cmwlth. 2002); *Ridge v. State Employees' Retirement Board,* 690 A.2d 1312 (Pa.Cmwlth. 1997). The Court referred to standards for evaluating constitutional issues not previously decided, *see Commonwealth v. Cleckley,* 558 Pa. 517, 738 A.2d 427 (1999), and it referred to the rules of statutory construction that technical words shall be interpreted according to their peculiar and appropriate meaning or definition, Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903, and that the legislature intended every word, sentence or provision of a statute to be given effect and intended different meanings when enacting two separate provisions at the same time. *See* Section 1922, 1 Pa.C.S. § 1922.

In *Auditor General I* the Court expressly concluded as follows:

> Article VIII, § 10 of the Pennsylvania Constitution commands audit of the financial affairs of state-funded or financially aided entities and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth in accordance with generally accepted auditing standards. Pursuant to *McCall* [*v. Barrios–Paoli,* 93 N.Y.2d 99, 688 N.Y.S.2d 107, 710 N.E.2d 671 (1999)], an audit of an agency's financial affairs connotes something more than mere examination of financial accounts or records; rather it entails broader inquiry as contemplated by the performance audits. The common pleas court in *Klenk* [*v. Rizzo,* 3 Phila. 438 (C.P.Pa.1977), aff'd per curiam on trial court opinion, (Pa.Cmwlth., Nos. 1327, 1341 C.D.1978, filed October 11, 1979)] concluded that the term "affairs" has a broader meaning than simply financial accounting, that the term "special audit" should be understood in the context of the accounting profession and that an operational, or performance, audit is a form of special audit.

*Id.,* 836 A.2d at 1067 (footnote omitted).

Moreover, the Court noted that in Section 402 of The Fiscal Code the legislature authorized the Auditor General to conduct special audits of the affairs of all departments, boards, commissions or officers when they may appear to the Auditor General to be necessary and made it unlawful for such persons or entities to expend appropriations to conduct audits of their own affairs. The Court also noted the Attorney General's opinion, reproduced in 187 Legislative Journal of the Senate of Pennsylvania 368, April 28, 2003, which determined that the Funds' proposed contracts

with Independent Financial Services, Inc. (IFS) were barred by Section 402. The Court accordingly overruled Respondents' demurrer to Count I.

## II

For purposes of their motion for summary relief on Count I of the amended petition for review, Petitioners rely, *inter alia*, upon the following undisputed material facts. The Department is a government auditing agency, which conducts audits of the expenditures and affairs of Commonwealth agencies and officials. The SERS and PSERS are independent agencies of the Commonwealth that administer payment of retirement benefits, respectively, to state employees and elected officials under the State Employees' Retirement Code, 71 Pa.C.S. §§ 5101–5956, and to public school employees under the Public School Employees' Retirement Code, 24 Pa.C.S. §§ 8108–8535. *See Auditor General I*, 836 A.2d at 1057. In September and November of 2002, the Department notified Respondents in writing of the Department's decision to conduct performance audits of the Funds, pursuant to authority under Article VIII, Section 10 of the Constitution, Sections 402 and 403 of The Fiscal Code and historical precedent. Petitioner Casey and prior Auditors General have conducted performance audits of state boards, commissions and agencies.

The United States Comptroller General promulgated the "Generally Accepted Government Auditing Standards" (GAGAS). Under GAGAS a performance audit is defined as "an objective and systematic examination of evidence for the purpose of providing an independent assessment of the performance of a government organization, program, activity or function in order to provide information to improve public accountability and facilitate decision-making by parties with responsibility to oversee or initiate corrective action." U.S. General Accounting Office, Government Auditing Standards (1994 Revision as amended) § 2.6.

After months of unsuccessfully seeking agreement from the Funds on audit engagement procedures and allocation of costs, the Auditor General made document requests to the Funds in December 2002, including requests for contracts between the Funds and the firms listed in the audit sample, solicitations for bids or for sole-source procurements and any reports used to evaluate the performance of the audit sample. Counsel for the Funds responded by letter dated January 7, 2003 that they took the position that the Auditor General lacked authority to conduct the performance audits. Thereafter, on January 15, 2003 and January 31, 2003, respectively, the SERS and PSERS boards voted to authorize contract negotiations with IFS for it to conduct the Funds' own performance audits. In April 2003 the Pennsylvania Attorney General refused to approve the Funds' proposed IFS contracts after ruling that they were barred by Section 402 of The Fiscal Code.

Petitioners note that pursuant to Pa. R.A.P. 1532(b) the Court may grant summary relief where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried and that the moving party is entitled to relief as a matter of law. *Magazine Publishers of America v. Department of Revenue*, 151 Pa.Cmwlth. 592, 618 A.2d 1056 (1992), *aff'd*, 539 Pa. 563, 654 A.2d 519 (1995). They quote the definition of performance audit in GAGAS § 2.6, stated above, and they note also that performance audits examine the performance of an agency or program, focusing on process, results and/or compliance with applicable laws or policies, while financial audits determine whether an agency has

fairly presented its financial information and whether its system of internal controls ensures the integrity of that information and protects the agency's assets. GAGAS §§ 2.4, 2.6–2.9 and 6.26. Article VIII, Section 10 of the Constitution provides that agencies "shall be subject to audits made in accordance with generally accepted auditing standards," and those applicable to Petitioners, as a government auditing agency, are GAGAS. GAGAS § 1.13(a) states: "The term 'audit' includes both financial and performance audits."

Petitioners discuss the analyses in *Klenk* and *McCall*, and they argue that historical practice further supports the Auditor General's authority to conduct the performance audits. In this case, Petitioners assert, it is undisputed that the current Auditor General and his predecessors, including Respondent Hafer when she was in that post, have conducted numerous performance audits. This historical practice is evidence of the Department's longstanding interpretation of its authority, and courts grant "strong deference" to an agency's interpretation of a statute that it is charged to execute. *Bethenergy Mines Inc. v. Department of Environmental Protection*, 676 A.2d 711 (Pa.Cmwlth.1996) (holding that if precise issue is not clear in statute, reviewing court must not simply impose its own construction but must determine whether agency's construction is permissible). Thus Petitioners contend that they have established as a matter of law that they have constitutional and statutory authority to conduct performance audits generally.

Separately, Petitioners argue that it is clear and free from doubt that Respon-

dents' exclusive authority to manage and control the affairs of the Funds does not supersede Petitioners' general authority to conduct performance audits. Section 402 of The Fiscal Code prohibits any agency, including an independent administrative board, from expending money appropriated to it by the General Assembly for any audit of its affairs unless the Auditor General shall fail or refuse to make such an audit. This provision establishes the primary audit authority of the Auditor General over other agencies and indicates that the Funds would violate Section 402 by proceeding with their own audits.

Both 71 Pa.C.S. § 5931(a) and 24 Pa. C.S. § 8521(a), as amended by the Act of April 29, 1994, P.L. 159, provide: "Regardless of any other provision of law governing the investment of funds under the control of an administrative board of the State government, the trustees shall have exclusive control and management of the said fund, and full power to invest the same." Petitioners note, however, that the 1994 amendatory act eliminated the effect of other state investment laws on the Funds' activities but that it did not free the Funds from the primary audit authority in The Fiscal Code.

Respondents raise several arguments in opposition to a grant of summary relief. First, they emphasize that the Court's ruling in *Auditor General I* was under the standard of review for a demurrer. Now, however, on a motion for summary relief, the Court must resolve any doubts as to the existence of a genuine issue of material fact against the moving party. *Olbum v. Old Home Manor, Inc.*, 313 Pa.Super. 99, 459 A.2d 757 (1983).[3] Respondents argue

---

**3.** Respondents state that the Court previously did not have to reach and did not reach arguments they raised including whether the Funds' boards' statutory "exclusive control and management" over the Funds "regardless

of any other provisions of law" supersedes the Auditor General's general authority to conduct audits; whether the legislature deliberately chose not to grant performance audit authority; whether "special audits" under

that they have alleged many facts which, if true, would show that Petitioners are not entitled to judgment as a matter of law, including that the Auditor General lacks the authority to conduct the proposed audits, that they go beyond what is permitted under GAGAS, that there is no historical precedent because the Auditor General never conducted similar audits of the Funds and that Petitioners lack the capability to conduct the audits even if they were allowed.

Respondents contend that Petitioners' statements of the objectives have varied, and they aver that with their subpoenas Petitioners have demanded documents beyond the scope of any performance audit. Remarkably, Respondents maintain that "the actuarial methods employed by the Funds and the manner in which the Funds select their investment consultants and advisors have nothing to do with how the Funds perform." Brief of Respondents at 16 n8. Furthermore, they submit, the court in *Klenk* relied upon evidence from three expert witnesses who testified to the technical meaning of operational audits in ruling as it did.[4] In any event, Respondents maintain that discovery is required to determine whether Petitioners have the requisite expertise to conduct the audits at issue.[5]

Separately, Respondents stress that factual disputes exist regarding the historical precedent relied upon by Petitioners and that through discovery they hope to prove that the performance audits relied on by Petitioners were different from what is proposed now and that no audit of the type proposed has ever been conducted of the Funds. Respondents seek to ascertain through discovery if former Auditors General who conducted performance audits considered them to be "special audits" under Section 402 of The Fiscal Code. A factual dispute exists, as well, in that Petitioners deny that all prior performance audits have been consensual. Respondents urge that the legislature amended the Funds' enabling statutes in 1994 to provide that their exclusive control and management over fund assets is "[r]egardless of any other provision of law[.]" Petitioners do not point to performance audits of the Funds after 1994 as precedent, and Respondents seek to establish through discovery that Auditors General have not con-

The Fiscal Code were intended to refer only to scheduling; and whether none of the historical practice cited by Petitioners provides a basis for the audits at issue.

4. Respondents cite *Department of the Auditor General v. Pennsylvania State Police,* 844 A.2d 78 (Pa.Cmwlth.2004), which involved whether the Auditor General had authority to conduct a performance audit of the State Police's compliance with a statute requiring registration of certain sex offenders and whether the law itself prohibited disclosure. The Court simply held that it would have to determine the issues presented in the State Police's new matter before ordering the disclosure of sex offenders' names, addresses and release dates.

5. Respondents note that in an October 29, 2002 letter to the Funds, Petitioners' counsel

admitted that the Department could play a major role in only six of thirty-five areas to be covered and a minimal role in eleven other areas and that the remaining ones would be completed by an outside independent expert. Amended Petition for Review, Ex. M. They contend that the Court can assess Petitioners' capability only after they disclose relevant background, training and experience of their personnel through discovery. The letter does reflect the Department's proposal for extensive involvement of outside consultants and auditors in conducting the performance audit, but it also notes that thirty-four of the thirty-five proposed objectives of the audit were the same as the objectives listed by SERS in its proposal for an "operational review," with the Department adding only a determination of steps taken by the Funds to recover any losses relating to the recent corporate and auditing scandals. *Id.*

ducted performance audits of an agency vested with such an exclusive right.[6]

## III

The Court concludes that Petitioners are entitled to summary relief on Count I of their amended petition for review. Petitioners quote *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986): "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." The Court emphasizes that what is at issue in this case is whether the Department has constitutional and statutory authority to conduct performance audits of the Funds. Petitioners correctly characterize Respondents' assertions concerning their claimed need for discovery to inquire into the Department's professional expertise and capabilities as irrelevant to whether Petitioners have legal authority to conduct performance audits of the Funds. Petitioners are correct that whatever Respondents might learn in this regard through discovery would not justify rewriting applicable statutory and constitutional provisions.

Next Petitioners respond to Respondents' insistence that they must examine past performance audits, which number in the hundreds, to resolve a claimed factual dispute as to whether any such audits were similar to what Petitioners propose in this case. Petitioners support their contention that the Department has authority to conduct performance audits in part by citing the historical fact that the Department has conducted such audits in the past. Respondent Hafer and the other Respondents admitted that during her tenure as Auditor General the Department conducted performance audits, although she asserted that she conducted such audits "on a consensual basis" and that she "never asserted the legal or statutory authority" of the Department to perform such audits. Respondents' Answer to Amended Petition for Review and New Matter, ¶ 27.

Respondents have propounded discovery requests, currently stayed by order of the Court pending resolution of the present motion for summary relief, in which they ask Petitioners, among many other things, to identify all "Special Performance Audits" conducted by the Department since Robert P. Casey has been Auditor General, to set forth the scope of each such audit, to identify each and every person involved in the performance of such audit and the total number of hours spent on it both internally and by any outside consultant, to identify each and every outside consultant or expert retained, to provide an itemized lists of costs for each such audit and to identify who paid those costs. Respondents' First Set of Interrogatories Directed to Petitioners, Interrogatories 7–12. Even more broadly, Respondents' requested production of "any and all correspondence, memoranda, notes, and any

---

6. Finally, Respondents argue that the Court's mention of the Attorney General's memorandum disapproving the IFS contract does not mean that it entitles Petitioners to summary relief. Respondents posit that the Attorney General's opinion was not "an official opinion of the Attorney General under [Section 204(a) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended,*] 71 P.S. § 732–204(a)." Brief of Respondents at

22. They refer to Petitioner's characterization of the memorandum as an "official opinion" of the Attorney General but point out that the memorandum does not state that it should be construed as an official legal opinion giving legal advice concerning official conduct under Section 204(a) but rather refers to Section 204(f), 71 P.S. § 731–204(f), relating to the approval of contracts.

other communication, whether written or electronic, between or among Petitioners, or between or among any Petitioner and any third party, regarding and/or related to any and all performance audits and/or 'Special Performance Audits' conducted by Petitioner Department during Petitioner Casey's tenure as Auditor General." Respondents' First Set of Requests for Production of Documents Directed to Petitioners, Request No. 3. Petitioners argue, and the Court wholeheartedly agrees, that the only material fact regarding the Department's past practice is the undisputed fact that it indeed has conducted numerous audits with performance objectives as set forth in GAGAS.

Despite the efforts of Respondents to raise an issue as to whether the proposed audits in fact are performance audits, Petitioners argue that this point may readily be resolved by the Court as a matter of law. They repeat the definition in § 1.13(a) of GAGAS of "audit" as including financial and performance audits, and the definition of "performance audit" in § 2.6. Petitioners note that the audit objectives listed in the Department's November 8, 2002 letters to the Funds are clearly within the GAGAS definition. The stated audit objectives include, *e.g.*, "adequacy of and compliance with internal and external requirements regarding permissible investments and asset allocation among various types of investments;" "adequacy of and compliance with investment benchmarks, internal cost controls, and management protocols;" "adequacy of the fund's proxy voting process;" and "efficiency and effectiveness of the fund's current organizational structure and resources." Amended Petition for Review, Exs. Q and R. The Court, therefore, concludes that the proposed audits are performance audits under GAGAS § 2.6.

Petitioners state that they did not argue, as Respondents contend, that the decision in *Auditor General I* entitled them to the summary relief requested here. Nevertheless, they continue to believe that the Court's extensive analysis and reasoning and the adoption of Petitioners' legal arguments provide a compelling foundation for granting summary relief. The Court's conclusion plainly was that the Auditor General under Article VIII, Section 10 of the Constitution and Sections 402 and 403 of The Fiscal Code has the authority to conduct performance audits. Nothing in Respondents' Answer and New Matter or in their brief on the present motion provides a reason for the Court to change that conclusion.[7]

Finally, summary relief may be entered by the Court before the completion of discovery when additional discovery would not aid in the establishment of any material fact. *Manzetti v. Mercy Hosp. of Pittsburgh*, 565 Pa. 471, 776 A.2d 938 (2001). Petitioners argue that Respondents' proposed discovery is aimless and that allowing them to defeat the motion for summary relief based on mere assertions of disputed facts would frustrate the principle of judicial economy. The Court is in complete agreement that the discovery sought by Respondents is irrelevant to the basic legal question of whether the Department has constitutional and statutory authority to conduct performance audits of the Funds. The Court has determined

---

**7.** Petitioners similarly take issue with Respondents' characterization of their argument based upon the Attorney General's memorandum, which they cite for compelling and persuasive support for summary relief rather than as controlling authority. The Attorney General's memorandum, in fact, does provide such support. In addition, the Attorney General's ruling upon the propriety of a state contract under its express statutory authority in Section 204(f) of the Commonwealth Attorneys Act represents an official opinion.

that it does. The meaning of a performance audit is found in GAGAS, and the Department's exercise of its legal authority is not subject to challenge through massive discovery requests before the Department even begins its audits.

In sum, the Court holds that Petitioners have the legal authority to conduct the proposed performance audits of the Funds, and it accordingly grants Petitioners' motion for summary relief on Count I of their amended petition for review. In conjunction with the relief granted under Count I, the Court orders Respondents to provide the documents requested by the Department related to its conduct of the performance audits of the Funds consistent with GAGAS standards. Respondents shall cooperate with the Department in the conduct of its audits.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this 15th day of October, 2004, the motion for summary relief on Count I of the amended petition for review filed by Petitioners is granted. The Court declares that the Department of the Auditor General has the legal authority to conduct the Department's proposed performance audits of the State Employees' Retirement System and of the Public School Employees' Retirement System. Respondents are ordered to provide documents requested by the Department in connection with the performance audits and otherwise to cooperate with the Department in its efforts to conduct the audits. The Court's April 16, 2004 order staying discovery is made permanent.