BERKS COUNTY TAX COLLECTION COMMITTEE, Bucks County Tax Collection Committee, Chester County Tax Collection Committee, Lancaster County Tax Collection Committee, Montgomery County Tax Collection Committee, Petitioners

v.

The PENNSYLVANIA DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, Commonwealth of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2012.

Decided Jan. 7, 2013.

Jason T. Confair, Lancaster, for petitioners.

Joshua J. Vecchio, Assistant Counsel, Harrisburg, for respondent.

Jeffrey T. McGuire, Lemoyne, for intervenor Pennsylvania Institute of Certified Public Accountants.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Before this Court is the Motion for Summary Relief[1] filed by Berks County Tax Collection Committee, Bucks County Tax Collection Committee, Chester County Tax Collection Committee, Lancaster County Tax Collection Committee, and Montgomery County Tax Collection Committee (collectively, Committees) seeking judgment declaring: (1) that it is unlawful to apply an earned income tax (EIT) credit under Section 317 of the Local Tax Enabling Act

---

1. Pa. R.A.P. 1532(b) states that the court may grant summary relief "if the right of the applicant thereto is clear." Pursuant to Pa. R.A.P. 1532(b), this Court may grant summary relief where the moving party establishes that the case is clear and free from doubt, that there exist no genuine issues of material fact to be tried, and that the moving party is entitled to relief as a matter of law. *Department of Auditor General v. State Employees' Retirement System*, 860 A.2d 206, 210 (Pa.Cmwlth.2004).

(LTEA),[2] for the EIT paid by a non-resident to the City of Philadelphia under Section 1(a) of the statute commonly referred to as the Sterling Act[3] based on income earned in Philadelphia to the EIT imposed by a school district or another political subdivision for income earned outside of Philadelphia, and the Pennsylvania Department of Community and Economic Development's (DCED) interpretation of Section 317 providing for such a "super credit" is incorrect;[4] and (2) that the DCED should be compelled to officially sanction that Section 317 only provides a credit for the EIT paid to Philadelphia to income earned in Philadelphia and not to the EIT imposed by a school district or another political subdivision for income earned outside of Philadelphia, i.e., an "apportionment" application of the credit.

In 2008, the General Assembly enacted Act 32 which amended, restated and renumbered the sections of the LTEA. Under Sections 504(a) and 505(a), 53 P.S. §§ 6924.504(a), 6924.505(a), with the exception of Philadelphia and Allegheny Counties, Act 32 consolidated EIT collection for political subdivisions and school districts at the county level by creating tax collection districts that are roughly contiguous with county lines and created tax collection committees to oversee and govern the districts. Under Section 508(a), 53 P.S. § 6924.508(a), the DCED was empowered to prescribe standardized forms, reports, notices, returns and schedules and to promulgate regulations to carry out the LTEA's provisions. Importantly, the only amendment in Act 32 that the General

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6924.317. Section 317 states, in relevant part:

> Payment of any tax to any political subdivision pursuant to an ordinance or resolution passed or adopted prior to the effective date of this act shall be credited to and allowed as a deduction from the liability of taxpayers for any like tax respectively on salaries, wages, professions or other activities and for any income tax imposed by any other political subdivision of this Commonwealth under the authority of this chapter....

3. Act of August 5, 1932, Ex.Sess., P.L. 45, *as amended*, 53 P.S. § 15971. Section 1(a) states, in pertinent part:

> (a) From and after the effective date of this act, the council of any city of the first class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect, or provide for the levying, assessment and collection of, such taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city of the first class, as it shall determine....

In turn, Section 359(b)(1) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, added by the Act of August 31, 1971, P.L. 386, *as amended*, 72 P.S. § 7359(b)(1), limits the EIT that can be imposed by Philadelphia

on non-residents to 4⅝%. However, under Section 359(b)(2), 72 P.S. § 7359(b)(2), the rate can be increased to 75% of the rate imposed on residents in excess of 5¾%. Finally, Section 359(b)(3), 72 P.S. § 7359(b)(3), states, in pertinent part:

> (3) [E]ach city of the first class which imposes a tax pursuant to the ... Sterling Act shall, by ordinance direct every employer maintaining an office or transacting business within such city and making payment of compensation (i) to a resident individual, or (ii) to a nonresident individual taxpayer performing services on behalf of such employer within such city, shall deduct and withhold from such compensation for each payroll period a tax computed in such manner as to result, so far as practicable, in withholding from the employe's compensation during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due for such year with respect to such compensation....

4. Pursuant to Section 301(a)(16) of the Community and Economic Development Enhancement Act, Act of June 27, 1996, P.L. 403, 71 P.S. § 1709.301(a)(6), the powers and duties of the Department of Community Affairs with respect to the LTEA were transferred to the DCED.

Assembly made to the language of the relevant portion of Section 317, relating to the credit applied for the EIT paid to Philadelphia under the Sterling Act for income earned in Philadelphia, was to change the last word of the sentence from "act" to "chapter."

The Committees have filed a petition for review seeking a declaration that the "super credit" procedure is unlawful in violation of the Pennsylvania Constitution, Act 32, and the LTEA, and that the DCED should officially sanction the "apportionment" application of a credit for the EIT paid under the Sterling Act so that the credit is not applied to income earned outside of Philadelphia. On July 12, 2012, the DCED answered, stating, *inter alia,* that the "DCED has *not* formally and publicly interpreted section 317 of the LTEA as it relates to the method of calculating the credit that may be taken by a taxpayer respecting EIT liability as a result of his payment of the City wage tax", and that "DCED has *intentionally remained silent* on this legal issue because of lack of clarity in the law...." Respondent's Answer to Petition for Review at 2 (emphasis in original). On October 9, 2012, the parties filed a Joint Stipulation of Undisputed Facts and on October 31, 2012, the Committees filed the instant Motion for Summary Relief seeking a determination regarding whether a "super credit" for the EIT paid to Philadelphia applies as a credit to income earned by a non-resident in his or her "home" political subdivision or school district.

In their Motion for Summary Relief, the Committees argue that the application of the "super credit" violates the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, § 1,[5] and the LTEA because it treats similarly-situated taxpayers differently, and that it is contrary to other credits provided in other sections of the LTEA, the Tax Reform Code of 1971, and the Taxpayer Relief Act [6] that use an apportionment application of such credits. The Committees also argue that our decision in *Dunmire v. Applied Business Controls, Inc.,* 63 Pa.Cmwlth. 479, 440 A.2d 638 (1981) where we previously considered whether a "super credit" for taxes paid in Philadelphia by a non-resident under the Sterling Act for income earned in Philadelphia may be applied to the EIT imposed by a school district or another political subdivision for income earned outside of Philadelphia, has been misinterpreted or misconstrued to hold that non-residents are entitled to a credit against income earned in their home political subdivisions and school districts under Section 317 of the LTEA for the EIT paid to Philadelphia, and, if it is controlling, it should be reversed.

In *Dunmire,* Dunmire and Cassell were attorneys and partners in a law firm that had its principal office in the Borough of Norristown (Norristown) with branch offices in Philadelphia and the Borough of Jenkintown (Jenkintown). Dunmire did not live in Norristown or in the Norristown Area School District (School District), but Cassell was both a resident of the Township of East Norriton (East Norriton) and the School District. Norristown imposed a 1% EIT on both residents and non-residents working within the borough; the School District imposed a 1% EIT on residents living within the school district;

---

5. Article 8, Section 1 of the Pennsylvania Constitution states, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

6. Act of June 27, 2006, P.L. 1873, 53 P.S. §§ 6926.101–6926.5006.

and East Norriton imposed a 1% EIT on all residents of the township.

Dunmire filed earned income tax returns for the years 1974 through 1978, and Cassell filed returns for the years 1976 through 1978, in which both attorneys claimed a credit for the EIT due under the prior Section 14 of the LTEA for their respective shares of the Philadelphia net profits tax paid by the law firm. Regarding the manner in which Dunmire and Cassell calculated the tax credit that should be applied under the LTEA, this Court noted:

> As stipulated, the Petitioners' method of computing the allowed tax credit is as follows: Petitioners' total net earnings were multiplied by the 1% earned income tax rate to determine the gross earned income tax; *from that gross earned income tax they subtracted the amount of the Philadelphia net profits tax paid by them during the tax year to determine the net amount of earned income tax due.* To avoid a double deduction, the Petitioners, in initially reporting their total net earnings, added back their share of the Philadelphia net profits tax paid during the partnership's applicable fiscal year which would otherwise have reduced their net earnings.

*Dunmire,* 440 A.2d at 640 (emphasis added).

The tax collectors filed actions against both of them seeking payment of the EIT purportedly due arguing that the Philadelphia net profits tax paid should be deducted from Dunmire's and Cassell's tax base in determining the EIT due, while Dunmire and Cassell argued that the Philadelphia tax paid by them should be deducted from the EIT due to the Norristown, East Norriton and the School District tax collector. In addressing that issue, this Court explained:

A tax credit is commonly accepted to mean a direct reduction against the liability for tax owed. *See Somma v. Commonwealth* [405 A.2d 1323 (Pa.Cmwlth. 1979) ]; *Hanek v. Cities of Clairton* [354 A.2d 35 (Pa.Cmwlth.1976) ]. As defined in Black's Law Dictionary 1310 (5th ed.1979), a tax credit is a "(t)ype of offset in which the taxpayer is allowed a *deduction from his tax* for other taxes paid. A credit differs from a *deduction* to the extent that the former is subtracted from the tax while the latter is *subtracted from income before the tax* is computed." (Emphasis added.)

In this case, it is evident that the Respondent, that is, the taxing authority, has misinterpreted [the former] Section 14 of the [LTEA]. It has read that section to provide for a tax "deduction" when it provides for a "tax credit." The statute is plain and clearly defined.

Payment of any tax to any political subdivision pursuant to an ordinance or resolution passed or adopted prior to the effective date of this Act *shall be credited to and allowed as a deduction from the liability of taxpayers for any like tax* .... (Emphasis added.)

> \*    \*    \*

Since the Legislature obviously recognizes the difference between a tax credit and a deduction, it must be assumed that they would have used deduction language if it was their intention that the tax paid to one taking authority should be deducted from the taxpayer's base in determining his tax liability to another taxing authority. Here, however, the Legislature said plainly that a tax paid to one taxing authority should be credited to the tax liability to the other taxing authority. The words "deducted from" merely clarify the meaning of "credited."

> \*    \*    \*

It is clear from this analysis also, that a tax credit is a direct reduction from the liability for tax owed. Even Respondent's own tax return forms provide that credits are subtracted from the tax due and owing to determine the proper adjusted tax payment due. Consequently, we reverse the lower Court and hold that the Petitioners have accurately calculated the taxes paid to Respondent. *Dunmire,* 440 A.2d at 640–641. Thus, with respect to Cassell, who earned income in Norristown and who was a resident of East Norriton and the School District, this Court specifically held that he properly took a "super credit" under the former Section 14 of the LTEA for the Philadelphia net profits tax paid on the taxes that were due to the municipalities and the school district in which he worked and lived based on his total net earnings. *Id.*

Contrary to the Committees' claim, our holding in *Dunmire* has not been misinterpreted or misconstrued; it held that the taxpayers could apply a "super credit" of their Philadelphia EIT to their total net earnings, not just those attributable to Philadelphia, under the former Section 14 of the LTEA. *Dunmire,* 440 A.2d at 640–641. Moreover, the General Assembly enacted Act 32 in 2008, which made the minor amendment to Section 317 of the LTEA as indicated above. Our opinion in *Dunmire* applying a "super credit" under the prior version of Section 317 was filed by this Court in 1981. Had the General Assembly intended to ensure that a "super credit" is not applied under Section 317 to the EIT paid under the Sterling Act, in order to conform to other previously enacted statutory credits, it could have further amended the language of Section 317 to state its intention that the apportionment method should be used in the application of the credit rather than a "super credit."

*See, e.g., White Deer Township v. Napp,* 603 Pa. 562, 590, 985 A.2d 745, 762 (2009) ("[I]t is noteworthy that the legislature did not amend Section 606(a) [of the Second Class Township Code[7]] to limit auditor-approved compensation in any way, leaving intact Commonwealth Court precedent interpreting auditor-approved compensation to include deferred compensation.... Had the legislature intended to make changes in the law with respect to compensation for supervisor-employees, it could have done so expressly.") (citations omitted); *Birth Center v. St. Paul Companies, Inc.,* 567 Pa. 386, 404, 787 A.2d 376, 387 (2001) ("In enacting a statute, the legislature is presumed to have been familiar with the law, as it then existed and the judicial decisions construing it.... By failing to articulate any changes, the legislature implicitly acknowledged that the existing standards remain applicable.") (citations omitted). In sum, because we are bound by the controlling precedent of our opinion in *Dunmire,* it is clear that the Committees are not entitled to summary relief.

As to the Committees' uniformity claim, it is based upon the faulty premise that a taxpayer who earns income both in Philadelphia and outside Philadelphia and, therefore, pays the 3.4985% non-resident EIT under the Sterling Act on his or her Philadelphia-based income, is similarly situated with another taxpayer whose income is earned entirely outside Philadelphia and who is not subject to the Philadelphia non-resident EIT. While both taxpayers may earn income in the same political subdivision outside Philadelphia, the taxpayer with Philadelphia-based income is paying an increased EIT rate on a portion of that income whereas the EIT imposed on the other taxpayer's entire income is at a lower rate. *See, e.g., Somma,* 405 A.2d at

---

**7.** Act of May 1, 1933, P.L. 103, added by Act of November 9, P.L. 350, 53 P.S. § 65606(a).

1325 ("[W]e also recognize that 'reasonableness' is the standard by which classifications created by a taxation provision are judged and that the legislature ha[s] broad discretion in choosing acceptable categories.... [W]hen petitioners question the reasonableness of having to pay the sum of two taxes imposed by different authorities while others pay only one, they are not questioning the uniformity of the taxing provisions but rather the sense of fairness within the legislature which, by authorizing a local wage tax, permits the imposition of two separate and distinct taxes on one income. Two separate taxing schemes superimposed one upon the other do not create impermissible, unconstitutional inequalities; nor does recognition of credit for taxes paid to some other governmental authority.") (citations omitted).[8]

Accordingly, the Motion for Summary Relief is denied.[9]

### ORDER

AND NOW, this 7th day of January, 2013, the Motion for Summary Relief filed by Berks County Tax Collection Committee, Bucks County Tax Collection Committee, Chester County Tax Collection Committee, Lancaster County Tax Collection Committee, and Montgomery County Tax Collection Committee is denied.

---

8. The General Assembly's rationale for providing a "super credit" for the Philadelphia EIT paid by non-residents is manifest; it is to encourage these non-residents to continue working in Philadelphia and to continue to voluntarily subject themselves to an increased EIT rate rather than moving their workplaces to the surrounding municipalities whose EIT rate is a fraction of that imposed by Philadelphia. Nevertheless, the taxpayers are still subject to the EIT imposed by the local municipality or school district on income earned outside Philadelphia to the extent that that EIT exceeds the EIT paid to Philadelphia on the Philadelphia-based income.

9. DCED did not file a cross-motion for summary relief or any other dispositive motion.